NIGHT BOX
FILED

NOV 1 2 2004

CLARENCE MADDOX
CLERK, USDC/SDF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80103-CR-DIMITROULEAS
Magistrate Judge Torres


UNITED STATES OF AMERICA

     v.

CHRISTIANA PHILLIP

_____/


### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT PHILLIP'S MOTION TO DISMISS INDICTMENT

The United States of America respectfully submits that defendant Christiana Phillip's Motions To Dismiss Indictment is without merit and should be denied, for the reasons stated below.

### INTRODUCTION

On July 15, 2004, a federal grand jury in the Southern District of Florida returned a single-count indictment charging defendant Christiana Phillip with voting while an alien, a misdemeanor in violation of Title 18, United States Code, Section 611. That statute provides that:

> (a) It shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner unless---



(1) the election is held partly for some other purpose;

(2) aliens are authorized to vote for such other purpose under a State constitution or statute or a local ordinance; and

(3) voting for such other purpose is conducted independently of voting for a candidate for such Federal offices, in such a manner that an alien has the opportunity to vote for such other purpose, but not an opportunity to vote for a candidate for any one or more of such Federal offices.

(b) Any person who violates this section shall be fined under this title, imprisoned not more than one year, or both.

18 U.S.C. §611. The statute also provides that the provisions of subsection (a), making it a crime for aliens to vote, shall not apply if:

(1) each natural parent of the alien (or, in the case of an adopted alien, each adoptive parent of the alien) is or was a citizen (whether by birth or naturalization);

(2) the alien permanently resided in the United States prior to attaining the age of 16; and

(3) the alien reasonably believed at the time of voting in violation of such subsection that he or she was a citizen of the United States.

18 U.S.C. §611(c).

The defendant complains that the statutory language in subsection (a) does not contain either the words "knowingly" or "willfully." Because the defense then concludes that the statute fails to define any requisite criminal intent, the defendant protests that the statute fails under the Constitution, and the

2

indictment must be dismissed.  Perhaps sensing the difficulty with such a position, the defendant argues in the alternative that this Court impute a specific intent requirement to Section 611.  For a variety of reasons, each of these contentions must fail.  With Section 611, Congress enacted a general intent crime without constitutional infirmity, as explained more fully below.

ANALYSIS

I.   Section 611 Creates A Constitutional General Intent Crime

Section 611 involves two areas of congressional power.  One is the authority of Congress over immigration and naturalization.  The other is its authority to protect the right of citizens to vote.

Congress has broad power over immigration and naturalization, and its authority in this area is plenary.  Demore v. Kim, 538 U.S. 510, 521-22 (2003)(when exercising its broad power over immigration and naturalization, Congress may make rules which would be unacceptable if applied to citizens);  Fiallo v. Bell, 430 U.S. 787, 792-93 (1977)(judiciary has limited power regarding immigration legislation, where Congress has exceptionally broad power largely immune from judicial control); Kleindienst v. Mandel, 408 U.S. 753, 765-66 (1972)(Congress has plenary authority to legislate rules for the admission and exclusion of aliens); Oceanic Steam Navigation Co. v. Stranahan, 214 U.S. 320, 331, 334, 338, 342 (1909)(authority of Congress over right to bring aliens to this country embraces every conceivable aspect of that subject;

constitutional right of Congress to enact such legislation is the sole measure by which courts determine its validity; congressional power in this area is absolute).

Congress also has the well-established constitutional power to regulate federal elections. Buckley v. Valeo, 424 U.S. 1, 13, 90 (1976). It has broad powers to legislate in connection with the election of the President and Vice President. Id., n. 16. Section 611 is part of an extensive regulatory scheme embodied in portions of Title 18 and the Federal Election Campaign Act of 1971. See id. at 111, n.150.

When enacting Section 611, congressional authority over immigration matters and elections was explicitly invoked. 142 Cong. Rec. S4017, S4019 (104th Congress, 2d Session, Apr. 24, 1996)(invoking plenary authority over immigration matters and constitutional guarantee of republican form of government; stating that prohibition of voting by aliens is rationally related to purpose of encouraging naturalization). Review of Section 611 must occur in the context of Congress' exceptionally broad powers over aliens and immigration matters.

In this context especially, the defense's argument that a criminal statute cannot survive constitutional scrutiny when it declines to require proof of specific criminal intent must fail. There are numerous examples of statutes which do not require proof of intent and which do withstand review on constitutional grounds.

For example, even in <u>Morrissette v. United States</u>, 342 U.S. 246 (1952), a case the defense invokes, the Supreme Court noted that a criminal statute need not require proof of intent where penalties are relatively small and a conviction does not gravely endanger an offender's reputation. <u>Id</u>. at 256.   Thus, a statute is not automatically rendered unconstitutional because its definition of a felony lacks the element of scienter, as the defense in this case claims.   <u>Lambert v. California</u>, 355 U.S. 225, 228 (1957)(finding passive conduct of failing to register as felon violated due process, but stating that legislature has wide latitude to declare offense and exclude elements of knowledge; conduct alone, without regard to intent, is often sufficient to establish crime); <u>Williams v. North Carolina</u>, 325 U.S. 226, 238 (1945)(courts have repeatedly overruled objection to punishment for crime when defendant is ignorant of all the facts; mistaken notions about legal rights are not sufficient to bar prosecution for crime); <u>United States v. Ayo-Gonzalez</u>, 536 F.2d 652 (5ᵗʰ Cir. 1976)(due process is not violated simply because <u>mens</u> <u>rea</u> is not element of crime; in this case, crime of fishing in contiguous zone in violation of 16 U.S.C. §1081), <u>cert. denied</u>, 429 U.S. 1072 (1977); <u>see</u> <u>also</u> <u>United States v. International Minerals Chemical Corp.</u>, 402 U.S. 558, 564-65 (1971)(suggesting, without defining, that due process may create some limits on imposition of strict criminal liability).

In <u>United States v. Engler</u>, 806 F.2d 425 (3ʳᵈ Cir. 1986), a

court of appeals surveyed the then-existing law concerning scienter, and found that the absence of intent from a felony provision of the Migratory Bird Treaty Act, 16 U.S.C. §703, did not violate due process. Id. at 435. The opinion in Engler reviewed various cases involving strict liability crimes which survived constitutional scrutiny, id. at 435, noting that due process was not violated in cases where such liability resulted as part of a regulatory measure, in the interests of public safety, where the prohibition of certain conduct would not likely come as a surprise. Id. That opinion also noted that the presumption of implying scienter into an otherwise silent statute did not apply to regulatory measures not rooted in common law. Id. See also United States v. Unser, 165 F.3d 755 (10th Cir. 1999)(unlawful possession of motor vehicle in national forest wilderness area was valid public welfare offense with no mens rea requirement, despite lack of threat to community's health or safety from offense).

Under Engler and the authorities it cites, as well as cases mentioned above, this Court could not automatically conclude that even a felony offense requiring no showing of criminal intent violated due process. Nor can this Court presume that the misdemeanor statute at issue here violates due process because it fails to specify intent. The statute in question creates only misdemeanor liability, and would not create either the penalties or the injury to reputation generated by a felony offense. Under the

6

kind of analysis adopted in Engler, the crime at issue here is also not one which causes surprise that the conduct in question is prohibited.  See United States v. Esparza-Mendoza, 265 F.Supp.2d 1254, 1268 (D. Utah 2003)(noting that by the early 1800's, aliens were removed from the franchise).

The conduct of aliens in this country is regulated in many ways that the conduct of citizens is not.  Even lawfully resident aliens may receive stricter scrutiny at the border, must carry a special identification card within the United States, must provide documentation for private employment which citizens need not, and may face more restricted access to federal benefits such as Medicare or food stamps which citizens do not.  E.g., Plyler v. Certain Named and Unnamed Undocumented Alien Children, 457 U.S. 202, (1982)(dissenting opinion listing federal benefits from which illegal aliens are excluded); Mathews v. Diaz, 426 U.S. 67 (1980)(limiting Medicare benefits to certain classes of resident aliens); Rodriguez v. United States, 169 F.3d 1342 (11th Cir. 1999)(upholding legislation limiting food stamps or SSI benefits to certain classes of legal aliens).  It is commonly known that aliens may not serve on juries, or fully participate in the governance of this country when they lack citizenship.  It is unreasonable to believe that an ordinary person would feel shock at a law enacting what most people assume, namely, that voting without citizenship carries some degree of criminal penalty.

Even more fatal to the defendant's claim, however, is the warning which appears on voter registration forms stating that one must be a citizen in order to register to vote, and requiring two separate acknowledgments of citizenship in order to register. Section 611 will not trap the unwary, innocent voter, when in order to vote in the first place, an applicant confronts a clearly stated warning of the citizenship requirement. In 1993, three years before enacting Section 611, Congress enacted the National Voter Registration Act, 42 U.S.C. §1973gg, which requires every State to include notice and affirmation of the citizenship requirement for voter registration. 42 U.S.C. §1973gg-3(c)(2)(C)(i); §1973gg-7(b)(2)(A); §1973gg-5(a)(6)(A)(i)(I). Because Congress enacted Section 611 years after establishing national requirements for warnings that citizenship is necessary for voter registration, the argument that Section 611 will convict the unwary non-citizen cannot persuade.

Thus, even if this Court viewed Section 611 as a strict liability offense, the statute would not violate due process. Its failure to address a particular form of criminal intent does not make the statute unconstitutional. The defendant is not entitled to have the indictment dismissed because of any statutory infirmity. The portion of the defendant's motion seeking dismissal because of mens rea must be denied.

While ample authority exists to reject the defendant's demand

for dismissal, the defense also seeks a ruling to address the type of intent which should apply under Section 611. As noted above, the statute could survive constitutional scrutiny as a strict liability offense. The language of the entire statute and other factors suggest, however, that Section 611 is most properly treated as a general intent crime.

A general intent crime requires the knowing commission of an act that the law makes a crime, while a specific intent crime requires additional bad purpose. United States v. Adams, 265 F.3d 420, 424 (6th Cir. 2001); United States v. Berrios-Centeno, 250 F.3d 294, 298-99 (5th Cir. 2001). Thus, a defendant need not intend to violate the law to commit a general intent crime, but must actually intend to do the act that the law forbids. United States v. Phillips, 19 F.3d 1565, 1576 (11th Cir. 1994). Here, that would mean that the defendant, while not a citizen, intended to vote.

The fact that a criminal statute omits any mention of intent does not necessarily mean that a court will construe it as eliminating intent as an element of proof. United States v. Henry, 111 F.3d 111, 114 (11th Cir.)(finding that 8 U.S.C. §1326, which is silent as to intent, is a general intent crime), cert. denied, 522 U.S. 894 (1997). Where a statute is silent as to intent, it becomes a question of legislative intent for a court to construe. Id. Where no specific intent element is apparent on the face of the statute, the crime is one of general intent. United States v.

Ettinger, 344 F. 3d 1149, 1158 (11th Cir. 2003)(finding that 18 U.S.C. §111, another statute silent as to intent, is general intent crime); United States v. Jackson, 248 F.3d 1028 (10th Cir.)(criminal statutes are usually read to require only that a defendant know the facts which make his conduct illegal, which is the same as general intent), cert. denied, 534 U.S. 929 (2001).  Put another way, any presumption in favor of scienter requires only proof of general intent, meaning that the defendant had knowledge of her actions in committing the offense.  Carter v. United States, 530 U.S. 255, 267-68 (2000).  The defendant argues incorrectly for a presumption of specific intent, a claim the law does not support, especially in the context of a regulatory rather than a common law offense.

The absence of strict liability is suggested from reading Section 611 as a whole.  In Section 611(c)(1)-(3), Congress listed certain factors which would preclude criminal liability, based in part upon a reasonable belief that the voter did not reasonably know of his or her alien status.  Congress precluded liability where the voter had parents who were citizens, had lived in the United States since the age of 16, and otherwise had a reasonable belief in his or her own citizenship.  Had Congress intended to enact a true strict liability offense, the voter's lack of knowledge of non-citizenship would be irrelevant, even under the circumstances the statute lists in Section 611(c).  That Congress chose to address these factors indicates its intent to legislate

10

conduct based upon knowledge of alien status and knowingly voting in a federal election.

The absence of strict liability, however, in no way compels a requirement of specific intent as the defendant suggests. As noted above, there is a presumption favoring general intent, and nothing in the statute's legislative history hints that Congress intended to enact a specific intent crime with this provision. The language of Section 611 is similar to other statutes which have been found to be general intent crimes. For example, 8 U.S.C. §1326, an immigration felony preventing attempted or actual illegal re-entry after deportation, is a general intent crime. United States v. Marte, 356 F.3d 1336, 1344 (11th Cir. 2004)(excluding evidence concerning defendant's specific intent). Like Section 611, Section 1326 does not use the words "knowingly" or "willfully," and contains no explicit reference to criminal intent. With respect to intent, the language of the felon-in-possession statute, 18 U.S.C. §922(g)(1), is similar to Section 611, and is also a general intent crime. United States v. Delevaux, 205 F.3d 1292, 1298 (11th Cir. 2000)(Section 922(g)(1) has no mens rea and thus justification defense does not apply; government must only show that defendant consciously possessed what he knew to be a firearm), cert. denied, 530 U.S. 1264 (2000); see United States v. Bailey, 444 U.S. 394 (1980)(federal escape statute, 18 U.S.C. §751, is silent as to intent, and requires the government to prove the defendant's

11

knowledge of his actions rather than purpose of escape).

When enacting similar legislation, Congress was capable of explicitly addressing intent.  Compare 18 U.S.C. §1015(f)(a felony for knowingly making a false claim of citizenship to vote or register to vote); 42 U.S.C. §1973i (a felony for knowingly and willfully giving false information to establish ability to register to vote); 18 U.S.C. §605 (a misdemeanor for disclosure, for political purposes, of names of persons receiving relief pursuant to an act of Congress).  Congressional legislation of explicit or specific intent in the same legislative area as Section 611 demonstrates that had Congress intended to make voting by aliens a specific intent crime, it would have done so explicitly.

The defendant's citations fail to compel a different result. For example, the defense invokes <u>Carter v. United States</u>, 530 U.S. 255 (2000), an opinion addressing whether that defendant was guilty only of a lesser included offense of bank robbery as opposed to bank robbery itself.  To address the argument that one statute required a finding of specific intent, the Court noted that statutory silence on scienter created a presumption of general, rather than specific intent. <u>Id</u>. at 267.  A judicial inference of specific intent is only necessary where it is required to avoid prosecution for what might seem to be innocent conduct.  <u>Id</u>. at 269.  Thus, if possession of a firearm with certain characteristics is unlawful, a citizen would need knowledge of the law in question

to be guilty of that offense, since firearms possession is in general not a crime. <u>United States v. Staples</u>, 511 U.S. 600, 610-11, 614 (1994).

The offense at issue here, however, does not fit the <u>Staples</u> requirement of one which would trap the unwary. There is a long history in this country of limiting the franchise to citizens, in contrast to the long tradition of allowing possession of firearms. Limiting the vote to citizens is not unique to the United States, and can be viewed as a matter of common sense. While it may not be a crime to be an alien or to vote, the combination of the two is one which immediately signals a problem, unlike possession of a firearm whose unlawful characteristics may not even be readily apparent. To get to the voting booth at all, aliens must confront notice that citizenship is a prerequisite to voting.

Similarly, it is not a separate crime to be a felon, and it is not a crime to possess a firearm, but in the absence of any reference to scienter, this jurisdiction has ruled that only knowledge of one's actions, rather than a specific intent to violate the law, is necessary to establish the offense of being a felon in possession of a firearm. The defendant thus fails to show any grounds for reading specific, as opposed to general, intent into Section 611.

For similar reasons, the defendant's reliance on <u>United States v. X-Citement Video</u>, 513 U.S. 64 (1994) is deficient. In <u>X-</u>

<u>Citement Video</u>, the Court explicitly stated its First Amendment concerns, noting that the First Amendment would preclude expectation that obscene materials would be regulated. That preclusion does not apply in the context of broadly regulated immigration affairs, or in a context where those who register to vote cannot avoid notice of the requirement for citizenship. Both <u>X-Citement Video</u>, and <u>Liparota v. United States</u>, 471 U.S. 419 (1985) also fail to assist the defense in this case, insofar as both statutes explicitly required knowing conduct to establish a violation, leaving the Court to interpret the type of knowledge required and the statutory elements subject to such knowledge.

Another case the defense cites, <u>United States v. Pasillas-Gaytan</u>, 192 F.3d 864, 868 (9th Cir. 1999), supports the government's position in this case. That opinion concerned a violation of 18 U.S.C. §1425, which prohibits "knowingly" procuring naturalization contrary to law. The Ninth Circuit Court of Appeals rejected the government's argument for strict liability and the defense demand for a specific intent requirement, ruling instead that the statute required "the usual" presumption that the defendant must know the facts which make his conduct illegal. <u>Id</u>. at 868. The opinion rejected any argument that the defendant had to have knowledge that his conduct was in fact illegal. <u>Id</u>. at 867. Thus, the opinion is consistent with the government's position here, requiring only a showing of general intent.

14

In summary, the law does not support the defendant's claim that the mere absence of explicitly stated intent in a criminal statute causes a constitutional defect.  Absent explicitly stated intent requirements, a court must look to the language of the statute itself, congressional intent, the degree of punishment or potential injury to reputation from the offense, whether the offense is regulatory or derived from common law, and whether the proscribed conduct creates an expectation of regulation and punishment.  Where a statute is silent as to intent, the presumption is that it creates a general intent crime, as opposed to strict liability or an offense requiring specific intent. The statute at issue here, while arguably one that qualifies for strict liability, fails under every test for specific intent.  For the reasons stated above, Section 611 creates a general intent crime, and the defendant's motion fails to warrant relief.

15

CONCLUSION

For all of the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: _____

KAREN E. ROCHLIN
ASSISTANT U.S. ATTORNEY
99 N.E. 4th Street
Miami, Florida  33132
(305) 961-9234
(305) 536-4675 (fax)
Court I.D. No. A5500050

16

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by hand this _____ day of November, 2004 on **Martin J. Bidwill, AFPD, 400 Australian Avenue North, Suite 300, West Palm Beach, Florida 33041.**

KAREN E. ROCHLIN

17